ROBERT HOLLISTER AND ANOTHER *vs.* LYMAN HOLLISTER.

The statute (Gen. Statutes, tit. 21, ch. 2,) which gives certain powers to the proprietors of common fields, does not make them a corporation.

Where, in an action brought by the fence-viewers of a common field against a delinquent owner for the cost of making a portion of fence allotted to him, the proprietors were described as "Proprietors of Log-landing common field in *G*," and the plaintiffs, for the purpose of proving the legal establishment of the common field, offered a judgment of court establishing the bounds of "the common field in *G* called Nahog Meadow," and a book entitled "Records of the North common fields in Nayogg Meadow," with evidence that the common field referred to in each case was the same with that described in the declaration, and that it was known by all the different names, it was held that the evidence was admissible.

The report of a committee of the proprietors appointed to alter the line of fence and allot it to the several proprietors, need not be accepted by a vote of the proprietors. It is enough under the statute if they "cause their doings to be entered with the clerk of the field."

The fence-viewers provided for by the statute are quasi public officers, and their having acted officially is prima facie evidence of their appointment and qualification.

And this rule applies although they are themselves plaintiffs in the case.

The statute provides for a recovery by the fence-viewers by a suit at law of double the expense of making the fence for a delinquent proprietor, if he shall neglect to pay or take an appeal provided for, for ten days "after an account shall be presented and payment demanded." A statement of the appraisal of the fence at a gross sum, held to be a sufficient "account," in the absence of any objection, or request for a more detailed statement, by the defendant at the time.

Where a section of fence was set by a committee of the proprietors to the defendant, who was and had long been in the sole enjoyment of the benefit of the piece of land charged with the fence, but who in fact was not sole owner, it was held that this was not a valid defence against the suit of the fence-viewers.

ACTION on the case, under the 30th section of the statute concerning common fields, (Gen. Statutes, tit. 21, ch. 2,) by fence-viewers, to recover double the expense of making a fence for a delinquent proprietor, brought before a justice of the peace and appealed by the defendant to the Superior Court in Hartford County, and tried, on the general issue, closed to the court, before *Carpenter, J.*

The declaration alleged " that at the annual meeting of the Proprietors of Log-landing common-field in said Glastenbury, held at the usual place of meeting, on the 6th day of March, 1865, the plaintiffs were chosen fence-viewers of said common-field for the year ensuing, and were duly sworn ; and on the 13th day of September, 1865, as said fence-viewers, inspected the fence around said common-field, and found that portion of said fence which the defendant ought to make and maintain, insufficient and defective, and on said 13th day of September, 1865, they gave notice in writing to the defendant of such being insufficient and defective, and gave him notice to make and repair the same within five days, according to the statute in such case made and provided, and the defendant having neglected and refused to make and repair said fence within five days as aforesaid, the plaintiffs, on the 2d day of October, 1865, made and repaired the same, and on the 9th day of October, 1865, appraised the expense of the same at the sum of twenty-two dollars and fifty cents, of which appraisal the plaintiffs, on said 9th day of October, 1865, gave notice in writing to the defendant, and demanded of him the sum of forty-five dollars, being double the amount of said appraisal, which the defendant has hitherto neglected and refused to pay ; and the plaintiffs say that the defendant did not within ten days after the presentation and demand of the said bill of appraisement as aforesaid apply to two of the selectmen or fence-viewers of said town, to appraise and estimate the expense as aforesaid ; whereby an action of the case hath accrued to the plaintiffs by virtue of the statute in such case made and provided, to recover of the defendant the aforesaid sum of forty-five dollars, &c."

On the trial of the case the plaintiffs, for the purpose of proving the existence of " Log-landing common-field," offered in evidence a record of the judgment of the County Court, for the county of Hartford, rendered in the year 1825, altering and dividing the bounds of the " Common-field in Glastenbury, in said county, known and called by the name of Nahog Meadow." The plaintiffs also offered in evidence, for the purpose of proving other parts of their case, a record of the doings of the proprietors of a common-field, appointing the plaintiffs fence-viewers, and for that purpose offered in evidence the record book itself, which was entitled "The records of the North common-fields in Nayogg Meadow." To the admission of this evidence, for any purpose, the defendant objected, on the ground that the common-field described in each of the records was other than the common-field described in the declaration. The plaintiffs claimed that the evidence was admissible in connection with other evidence offered by them, tending to prove that the records and the declaration had reference to one and the same common-field. The court admitted the evidence subject to the objection, and upon all the evidence in the cause found that there was but one common-field, and that it was at different times called by different names.

The plaintiffs also offered in evidence a copy of a vote of the proprietors of said common-field at a meeting held on the 6th day of March, 1865, which vote was as follows: " That the committee be instructed and authorized to alter the line of fence of the common-field and re-assess the fence to the proprietors of said field." They also offered in evidence the report of the doings of the committee under the vote. The report was recorded at length on the records of the proprietors, but there was no vote of the proprietors accepting the report. There was also evidence to prove, and it was proved, that the action of the committee had been acquiesced in by the proprietors. The defendant objected to the reception of the report in evidence, on the ground that there was no vote of the proprietors accepting the report. The court overruled the objection and admitted the evidence.

After the evidence was closed, and during the argument, the counsel for the defendant claimed that, inasmuch as there was no evidence that the plaintiffs were sworn as fence-viewers, they could not recover in this action, and asked the court to rule accordingly. The court did not so rule.

The plaintiffs appraised the fence made by them, and for which this suit was brought, at the sum of $22.50, and gave the appraisal to the defendant; but there was no detailed statement of the cost and expense of building the fence given to him; none was however required by him, and no objection was made to the appraisal on that account. The defendant now claimed that the action of the plaintiffs in this respect was not a compliance with the statute, and that they could not recover, and asked the court so to decide. But the court did not so decide.

The defendant was the owner of an undivided half of a certain tract of land in the common-field, the other half being owned partly by his mother, Ruey Hollister, and partly by the heirs of his brother, Jared Hollister. For about fifteen years the defendant had had the beneficial use and enjoyment of the whole of the tract of land, possessing and using the same during all that time as his own. In the re-assessment of the fence to the proprietors of the common-field by the committee, no part thereof was apportioned to Ruey Hollister nor to the heirs of Jared Hollister, but the whole fence apportioned to that tract of land, and for the building of which the suit was brought, was set to the defendant, and he was required to build and maintain the same. The defendant claimed that the division of the fence thus made by the committee was void, for the reason that no part of the fence was set to Ruey Hollister and the heirs of Jared Hollister, and asked the court so to decide, but the court did not so decide.

The court rendered judgment in favor of the plaintiffs, and the defendant moved for a new trial.

*Cornwall*, in support of the motion.

1. The plaintiffs allege that on the 6th day of March, 1865,

they were duly appointed fence-viewers by the proprietors of "*Log-landing Common-field, in Glastenbury,*" *and sworn.* All their authority is derived from the statute with regard to common-fields. To enable them to recover they must show on their part, and on the part of the proprietors appointing them, a strict and literal compliance with the statute in these respects at least. A common-field is a corporation formed by authority of law, with an assumed *name, book of records, officers, &c.*, and is legally known by no other name than that assumed, and can only speak by its records. 1 Swift's Dig., 70. The plaintiffs allege that they are fence-viewers of "*Log-landing Common-field in Glastenbury.*" They must therefore, to prove this, introduce the records of Log-landing Common-field, and not the records of any other corporation. But the only records introduced to prove their appointment, are the records of the "North Common-field, in Nayog Meadow." This record is admitted by the court, but only in connection with parol testimony offered and admitted, tending to prove that the records and the declaration refer to the same common-field. The whole evidence was inadmissible; the record on the ground of the variance between it and the declaration, and the parol testimony was not proper to change the record or show that it meant something different from what was plainly written and could easily be comprehended.

2. The vote of March 6th, 1865, instructing the committee to alter the line of, and re-assess the fence among the proprietors, does not of itself alter the line of fence, but only leaves it to the committee. The committee acted and made report of their alterations, and that report should have been accepted by a vote of the proprietors, because they were attempting to alter a common line of fence which had been established and which could not be done except by a vote of the proprietors. Sec. 25.

3. The plaintiffs should have proved that part of their declaration which sets out that they were *duly sworn* as fence-viewers, and had thereby complied with the statute. This cannot be presumed; if so all other parts of the case may be presumed.

4. The plaintiffs, as fence viewers, having constructed the fence belonging to the defendant to construct, were by statute bound to furnish him an *account* of the costs and expenses. Sec. 30. This the court finds that they did not do, but finds that they appraised the whole in one sum, and handed a statement of that to the defendant. Such an appraisal is not an " *account* " within the statute. A right of appeal exists for ten days after an " *account* " is presented and demanded. To furnish an account is to furnish a statement of *items*, which it is absolutely necessary for the party to know, in order that he may decide whether he will appeal.

5. The action of the proprietors and fence-viewers is void as relates to the defendant, as their assessment of the fence does not embrace all of the proprietors, and increases the quantity of fence set to the defendant one-half. Here the importance of an *account* is seen, stating the number of rods or feet, posts, rails, time occupied, &c., which account is the basis of an appeal.

*Merrick,* contra.

BUTLER, J. In this case we are of opinion that there are no errors in the rulings of the Superior Court which will justify us in advising a new trial.

1. We are all satisfied that the record and evidence in relation to the name of the common-field were properly admitted; the motion shows that there was but one field and that was known at different times by different names. The objection of the defendant is founded upon the idea that the proprietors of the field were a corporation. In that we think he is mistaken. The proprietors of common-fields are authorized to do certain acts, which they might also do if a corporation. But, in the first place, the acts which they are authorized to do are not necessarily corporate, and relate to the single purpose of erecting and maintaing a *common fence* for the protection of their *several* property, and even in respect to such fence they are several and not joint proprietors. They are not authorized to hold joint property at all; and all their

rights continue several, except perhaps the incidental one in respect to a common pasturage at the close of the season. And, in the second place, the legislature has not in express terms made them a body politic and corporate, as they have uniformly done in other cases where they intended to create a corporation.    Nor have they provided that the proprietors of such fields shall have a corporate name or seal ; nor given them power to hold property ;   nor to sue or be sued ;   but have withheld from them many of the essential attributes of a corporation.    We think it very clear therefore that the General Assembly did not intend to constitute them a corporation, and that no corporate name was required or existed, and that the evidence was admissible for the purpose for which it was offered and received.

2.  We are all satisfied also that the report of the committee appointed to alter the line of fence was  properly received in evidence.   The statute does not require that the report of the committee in such case should be accepted by a vote of the proprietors.    All that it requires is that they shall " cause their doings to be entered with the clerk of the field."    The motion shows that this was  done, and  the report recorded at length on the records of the proprietors.

3.  The third objection of the defendant is founded upon a claim made in the court below, that inasmuch as there was no evidence that the plaintiffs were sworn as fence-viewers, they could not recover in the action.  The claim was properly overruled by the court.   These fence-viewers are quasi public officers, and it is elementary law that proof of their having acted as such officers is *prima facie* evidence of their appointment and qualification; and this seems to be true although they are parties to the record.    The law is so stated by Taylor on  Evidence in  England (vol. 1, page 156,) and by Mr. Greenleaf in  this country (Evidence, vol. 1, § 92,) and see several of our own and other cases collected by Cowen and Hill, and cited in their notes to Phillips' Evidence (vol. 2, p. 554.)   We know of no well-considered case to the contrary.

4.  A question of more difficulty, and upon which the court were not all agreed at first, relates to the form in which the

plaintiffs made demand of the defendant for compensation for erecting the fence. The motion states that "the plaintiffs *appraised* the fence made by them and for which this suit was brought at the sum of $22.50, and gave the appraisal to the defendant, but there was no detailed statement of the cost and expense of building the fence given to the defendant, and none was required by him, and no objection was made to the appraisal on that account." The objection is that the plaintiffs should have presented to the defendant a bill of items, or technical "*account*" of the cost and expenses. We are not prepared to assent to this claim. The statute uses the word "account." But in the first place, it does not appear what the fence was, and whether a detailed statement of items was or was not practicable or important. Neither the character of the fence nor the precise form of the bill is given, and for aught that appears the plaintiffs may lawfully have contracted for the building of the fence by others for a gross sum, or to have it built for what it was worth. In the second place, we know of no reason why a detailed statement should, in all cases, be required as a technical condition precedent to a right to recover. If the defendant was not satisfied with the amount of the bill presented, he could have asked for items, as in other cases, or appealed to the selectmen to estimate and appraise the expense of making the fence. And in the third place, we see nothing in the statute or the circumstances of the case which would justify us in holding that the legislature intended to make the right of the fence-viewers to recover of a *delinquent* proprietor the expense of building his fence, depend on the technical form in which the payment of such expense should be demanded. The legislature intended undoubtedly, not only that the officers of the law should be compensated for the performance of the delinquent's duty, but that the delinquent should have a *reasonable* opportunity to pay for the same before he should be subjected to a suit. But we do not think they could have intended more, or that the term "account" is used in the statute in a strict technical sense. We think it is used as meaning a statement of the amount "of the cost and charges of

Hollister *v.* Hollister.

building the fence." Moreover, new trials are never granted where it does not appear that injustice has or may have been done, and in this case the amount of the demand was small, and it does not appear from any objection made by the defendant at the time, or any appeal taken by him, or in any other manner, that the bill was not a reasonable one or that any injustice has been done in that respect to the defendant. On the other hand, we think it would be gross injustice to the plaintiffs to grant a new trial and advise the Superior Court to turn them out of court under such circumstances, on such an objection.

5. The fifth and last objection is that the action of the fence-viewers was void. It appears that the defendant was not the sole owner of the land which was charged with the fence, but it further appears that he had occupied it for many years as his own, and that the committee who allotted the fence apportioned it to him; it does not appear that the action of the committee was without his knowledge or assent and acquiescence. The plaintiffs, as fence-viewers, had nothing to do with that apportionment. It was their *legal duty* when required, to build the fence *as apportioned* and collect of the person to whom the apportionment was made. The defendant made no objection to the bill on that ground before suit and trial, and under all the circumstances he cannot be permitted to avail himself of it against the plaintiffs.

For these reasons a new trial is not advised.

In this opinion the other judges concurred; except CARPENTER, J., who having tried the case in the court below, did not sit.